[Cite as *State v. Glaze*, 2019-Ohio-53.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-17-1269

     Appellee                            Trial Court No. CR0201702151

v.

Jesse Glaze                                      **DECISION AND JUDGMENT**

     Appellant                           Decided:  January 11, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Christopher Clark, for appellant.

* * * * *

**MAYLE, P.J.**

{¶ 1} Following a jury trial, defendant-appellant, Jesse Glaze, appeals the

October 20, 2017 judgment of the Lucas County Court of Common Pleas, convicting him

of rape and sentencing him to life in prison without parole.  For the reasons that follow,

we affirm the trial court judgment.

# I. Background

{¶ 2} On July 1, 2017, Jesse Glaze, also known as "Blue," stayed the night at the home of his friend, J.B. J.B. and his girlfriend slept in their bedroom. Glaze slept on the floor in the "front room," where J.B.'s nine-year-old daughter, M.B., slept on one couch and J.B.'s girlfriend's 17-year-old son, T.Q., slept on another.

{¶ 3} M.B. awoke around 5:00 a.m. to find Glaze with his hand down her pants and his fingers in her vagina. She woke her father, and told him that Glaze "touched her" and "hurted her." J.B. attacked Glaze with a crutch, demanded that he leave, then tasered him as he sat to put his shoes on. Glaze ran out, and J.B. called 9-1-1 to request police assistance.

{¶ 4} Police quickly found Glaze. He denied engaging in any sexual conduct with M.B. and consented to providing a DNA sample. Meanwhile, M.B.'s mother took M.B. to Toledo Hospital where she underwent a sexual assault nurse examination ("SANE").

{¶ 5} The SANE nurse observed two sets of linear lacerations or abrasions on the area inside M.B.'s labia. Her vagina and the crotch area of her underwear were swabbed for DNA and sent to the Bureau of Criminal Investigations ("BCI") for testing. That testing revealed no foreign DNA in M.B.'s vagina. The DNA of a male was found to be present on the inside of M.B.'s underwear, but there was not a sufficient amount of DNA to include or exclude Glaze as the contributor.

{¶ 6} Glaze was charged with one count of rape of a person less than 13 years of age, a violation of R.C. 2907.02(A)(1)(b) and (B). The matter was tried to a jury on

2.

October 16 and 17, 2018, and he was found guilty. The trial court classified Glaze a Tier-III sex offender, and because the victim was less than ten years of age, the court opted to impose a prison term of life without parole.

{¶ 7} Glaze appealed and assigns the following errors for our review:

First Assignment of Error: The Evidence at Appellant's Trial Was Insufficient to Support the Conviction, and Appellant's Conviction is Against the Manifest Weight of the Evidence.

Second Assignment of Error: The Sentence of Life Without the Opportunity of Parole Was Disproportionate to the Underlying Conduct in this Case, and Violates Appellant's Substantive Due Process Rights and Constitutes Cruel and Unusual Punishment as Prohibited by the Eighth Amendment.

## II. Law and Analysis

{¶ 8} In his first assignment of error, Glaze challenges both the sufficiency and weight of the evidence. He argues that the trial evidence contradicts M.B.'s assertion that Glaze digitally penetrated her. In his second assignment of error, Glaze challenges his sentence as disproportionate to the underlying crime, and he argues that his substantive due process rights were violated and that the sentence constitutes cruel and unusual punishment. We examine each of Glaze's assignments of error in turn.

## A. Sufficiency and Manifest Weight of the Evidence

{¶ 9} R.C. 2907.02(A)(1)(b) provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age * * *." "Sexual conduct" is defined under R.C. 2907.01(A) to include "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." In his first assignment of error, Glaze argues that the evidence presented by the state was insufficient to establish beyond a reasonable doubt that Glaze engaged in sexual conduct with M.B. He also argues that his conviction was against the manifest weight of the evidence.

{¶ 10} M.B. testified at trial that Glaze put his fingers in her vagina. Additionally, the SANE nurse testified that she observed injury to the inside of M.B.'s vagina. While Glaze acknowledges both M.B. and the SANE nurse's testimony, he contends that the evidence contradicts M.B.'s assertion of digital penetration and calls into question her credibility. He suggests that when M.B. told her father that Glaze "touched her" and "hurted her," J.B. jumped to the conclusion that Glaze had inserted his fingers into M.B.'s vagina. He then reported to the 9-1-1 operator that Glaze had "fingered" M.B., and M.B. merely repeated this characterization to the SANE nurse after hearing it from her father.

{¶ 11} Glaze also argues that there was no evidence presented to establish what caused M.B.'s vaginal injuries, and he emphasizes that there was no DNA evidence that

4.

he digitally penetrated her. He insists that it "defies reason" that he would sexually assault M.B. while 17-year-old T.Q. slept just ten feet away, and he maintains that his conduct in voluntarily providing a statement to police and consenting to a DNA sample is inconsistent with his having committed this crime.

{¶ 12} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

M.B. testified at trial that Glaze put his fingers in her vagina:

Q: When you say you woke up and you saw Blue in your pants, what does that mean?

A: He was in my vagina.

Q: He was in your vagina. What was he doing or? [sic]

A: He was touching me.

Q: He was touching you? What was he touching you with?

A: With his fingers.

* * *

Q: And when he touched you there, was it inside or outside your body?

A: Inside.

But immediately after this, M.B. said that it did not "feel" like Glaze was touching her "on the inside." She testified:

Q: How do you know it was inside?

A: Because I saw it.

Q: You saw it. Did it feel like it was on the inside?

A: No.

The state then sought clarification from M.B. on this point, and M.B. reiterated that Glaze put his fingers *inside* her vagina:

Q: But you know that he touched on the inside of your body?

[Defense counsel]: Objection.

A: Yeah.

The court: Overruled.

Q: I'm sorry, [M.B.], you said that you know he touched on the inside of your body?

A: Yeah.

{¶ 13} Because under the facts of this case the state was required to prove the "insertion" of Glaze's fingers into M.B.'s "vaginal or anal opening," Glaze focuses on

6.

M.B.'s testimony that she could not feel Glaze's fingers on the *inside* of her body. But M.B. nevertheless insisted that Glaze's fingers were inside her, and additional evidence was presented that was consistent with M.B.'s testimony.

{¶ 14} First, J.B. testified that his daughter told him that Glaze touched her *and it hurt*. But more importantly, the SANE nurse testified not only that M.B. *told* her that Glaze "fingered" her, but also that she *observed* several lacerations to M.B.'s vaginal area. Specifically, the SANE nurse said that she saw three linear lacerations on the *inside* of M.B.'s labia at the one o'clock to five o'clock positions and two linear lacerations at the 11 o'clock to nine o'clock positions. The nurse was asked: "So this was inside of her body?" and she responded: "Correct." She repeated this on redirect:

> Q: [Y]ou were able to see numerous injuries in this child's vagina?
>
> A: That's correct.
>
> Q: Inside of her body?
>
> A: Correct.

{¶ 15} In considering Glaze's sufficiency claim, we must determine whether the state adduced evidence of his guilt as to each element of the crime without taking into consideration matters of credibility. *State v. White*, 8th Dist. Cuyahoga No. 101576, 2015-Ohio-2387, ¶ 15. We recognized in *State v. Schuster*, 6th Dist. Lucas No. L-05-1365, 2007-Ohio-3463, ¶ 67, that "a number of appellate courts, including this court, have held that penetration of the labia is sufficient to prove penetration of the vagina for the purpose of satisfying R.C. 2907.02."

7.

{¶ 16} Here, the state presented (1) M.B.'s own testimony that Glaze touched her with his fingers on the inside of her body; (2) J.B.'s testimony that M.B. told her dad that Glaze touched her and it hurt; (3) the SANE nurse's testimony that M.B. told her that Glaze "fingered" her; and (4) the SANE nurse's testimony that she observed lacerations on the inside of M.B.'s labia. We find that if believed, this evidence was sufficient to prove that Glaze engaged in sexual conduct with M.B.

{¶ 17} Glaze points out that (1) the SANE nurse conceded that she could not accurately time M.B.'s injuries or say how they were caused; (2) the police did not swab Glaze's fingers for DNA; (3) there was no male DNA found in M.B.'s vagina; (4) while male DNA was found in M.B.'s underwear, the BCI forensic scientist conceded that DNA could have been deposited in any number of ways, including by simply folding the underwear; and (5) it defies reason that Glaze would sexually assault M.B. with T.Q. sleeping so close by. These points all go not to the sufficiency of the evidence, but to its weight.

{¶ 18} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of

8.

the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 19} It is true that the SANE nurse could not say how or when M.B.'s injuries occurred, however, she testified that M.B.'s injuries were consistent with the history she provided. And while the police did not swab Glaze's fingers, testimony was presented that it was not their practice to do this.

{¶ 20} As to the DNA evidence—or lack thereof—the BCI scientist stated that it is a lot less likely to find male DNA inside the vagina when there has been no exchange of bodily fluids. He testified that DNA persists longer on clothing than it does in a body cavity because the environment in a body cavity, such as the vagina, is constantly changing. He explained: "Any low level foreign DNA would be essentially covered up by the large amount of DNA that's being contributed by that individual." And while Glaze could not be included or excluded as the contributor of the DNA found in M.B.'s underwear, he also could not be excluded as having digitally penetrated M.B.

{¶ 21} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and

9.

discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14. Here, Glaze cross-examined the state's witnesses and skillfully challenged its evidence, but the jury nonetheless believed M.B. We cannot say that it clearly lost its way in resolving evidentiary conflicts in favor of the state or that this is the exceptional case weighing heavily against the conviction.

**{¶ 22}** Accordingly, we find Glaze's first assignment of error not well-taken.

## B. Glaze's Sentence

**{¶ 23}** In his second assignment of error, Glaze argues that under the facts of this case, his sentence of life in prison without the possibility of parole is disproportionate to the conduct involved, violates his substantive due process rights, and constitutes cruel and unusual punishment. The state counters that Glaze waived this argument by not raising it in the trial court. It also argues that life without parole for the rape of a child is not grossly disproportionate to the crime and no categorical restriction prohibits the imposition of a sentence of life without parole for the rape of a child under ten.

**{¶ 24}** R.C. 2907.02(B) provides that "if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, the court may impose upon the offender a term of life without parole." Because Glaze argues that this statute is unconstitutional as applied to his particular situation, he "bears the burden of presenting clear and convincing evidence of a presently existing state of facts

that make the statutes unconstitutional and void when applied to those facts." (Citations omitted.) *State v. Warren*, 118 Ohio St.3d 200, 2008-Ohio-2011, 887 N.E.2d 1145, ¶ 22.

{¶ 25} The Supreme Court of Ohio has recognized that "'[o]utside the death penalty context, the Eighth Amendment does not require strict proportionality between crime and sentence but forbids only extreme sentences that are grossly disproportionate to the crime.'" *Id.* at ¶ 25, quoting *Harmelin v. Michigan*, *501 U.S. 957,* 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In *Warren*, the Ohio Supreme Court refused to say that a sentence of life imprisonment without the possibility of parole is grossly disproportionate to the crime of rape of a child under the age of ten. *Id.*

{¶ 26} Other Ohio courts have held similarly. In *State v. Driscoll*, 2d Dist. Clark No. 2008 CA 93, 2009-Ohio-6134, ¶ 29, the court held that "[defendant's] sentence of life without parole for raping [a] four year old * * * in violation to R.C. 2907.02(A)(1)(b), does not constitute cruel and unusual punishment, because it is not disproportionate or shocking to the moral sense of the community, in view of the heinous nature of the crime." (Internal quotations omitted.) The court in *State v. Gladding*, 66 Ohio App.3d 502, 513, 585 N.E.2d 838 (11th Dist.1990), similarly concluded that "considering the heinousness of the crime of raping a nine-year-old child, it cannot be said that appellant's sentence was disproportionate or shocking to the moral sense of the community."

Like the defendants in *Warren*, *Driscoll*, and *Gladding*, Glaze was convicted of raping a child under the age of ten. And like those courts, we find that Glaze has failed to

11.

meet his burden of establishing by clear and convincing evidence that his sentence of life in prison without the possibility of parole was disproportionate to the conduct involved, violates his substantive due process rights, or constitutes cruel and unusual punishment.

{¶ 27} We find Glaze's second assignment of error not well-taken.

### III. Conclusion

{¶ 28} Sufficient evidence of sexual conduct was presented by the state to support Glaze's conviction of rape of a child under the age of 13. M.B. repeatedly testified that Glaze's fingers were inside her vagina, she reported to her father that Glaze touched her and it hurt, she told the SANE nurse that Glaze "fingered" her, and the SANE nurse observed two sets of lacerations on the inside of M.B.'s labia.

{¶ 29} Glaze's conviction was not against the manifest weight of the evidence despite the fact that M.B. testified that it did not "feel" like Glaze's fingers were "on the inside" of her body, his DNA was not identified in swabs taken during M.B.'s SANE examination, and the SANE nurse could not say when or how the lacerations to M.B.'s labia occurred. The jury made credibility determinations in favor of the state, and we do not find that it lost its way in doing so.

{¶ 30} Finally, consistent with other Ohio courts, we find that Glaze's sentence of life in prison without the possibility of parole was not disproportionate to the conduct involved, did not violate his substantive due process rights, and did not constitute cruel and unusual punishment.

12.

**{¶ 31}** We find Glaze's assignments of error not well-taken, and we affirm the October 20, 2017 judgment of the Lucas County Court of Common Pleas. Glaze is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

James D. Jensen, J.

_____
JUDGE

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.