[Cite as *State v. Smith*, 2023-Ohio-1613.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                      CASE NO. 1-22-40

     v.

MATTHEW W. SMITH,                      **O P I N I O N**

     DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2020 0355

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision: May 15, 2023**

APPEARANCES:

     *William T. Cramer* **for Appellant**

     *John R. Willamowski, Jr.* **for Appellee**

**EPLEY, J.**

{¶ 1} Defendant-appellant Matthew W. Smith appeals from his convictions in the Allen County Court of Common Pleas on twelve counts of rape (victim under age 13), five counts of rape by force or threat of force, and four counts of gross sexual imposition (victim under age 13). Smith claims that his right to confront witnesses was violated at trial by the admission of two of the children's forensic interviews, that two of his rape convictions were based on insufficient evidence, and that errors occurred with his sentence. For the following reasons, the trial court's judgment is affirmed in part and reversed in part, and the matter is remanded for resentencing on Counts 1, 2, 3, and 24.

## I. Facts and Procedural History

{¶ 2} The victims of Smith's offenses were his three step-daughters: H.B. (born in 2007), Ab.B. (born in 2009), and Al.B. (born in 2012). The three girls resided with their father, but they had parenting time with their mother every other weekend and some other times. Smith met their mother in 2016, and she moved in with him around February of 2017. The couple eventually married, and they lived in multiple locations between 2017 and 2020, mostly in Allen County.

{¶ 3} In late August or early September 2020, Al.B. told her father that Smith had been touching her. The girls' father talked to his daughters and obtained a civil protection order against his ex-wife and Smith. Ryan Pratt of Logan County Children Services became involved, and he scheduled forensic interviews for all

three girls. Pratt contacted Officer Chad Kunkleman, a juvenile investigator with the Lima Police Department, and informed the officer about the allegations against Smith and the planned interviews.

{¶ 4} On September 9, 2020, the girls were taken to Nationwide Children's Hospital in Columbus, Ohio, where they were separately interviewed by a forensic interviewer and then received a medical examination. H.B., Ab.B., and Al.B. each reported sexual abuse by Smith, and they said Smith told them that they would be in trouble if they told anyone.

{¶ 5} During her interview, H.B. reported ongoing abuse by Smith. She indicated that Smith repeatedly rubbed her chest and vaginal area, had her stroke his penis, performed oral sex on her, and had her perform oral sex on him. Beginning a few months before the interview, Smith began forcing H.B. to have vaginal intercourse with him; she indicated this occurred more than ten times. At one point, Smith had told H.B. that he would marry her when she turned 18 years old.

{¶ 6} Ab.B. revealed that, on several occasions, Smith had her rub his penis while he rubbed her "monkey," sliding his finger "through the crease." Smith also squeezed Ab.B.'s breast and buttocks. She said that Smith twice tried to put his penis in her buttocks, but she clenched her butt cheeks.

{¶ 7} Al.B. told her interviewer that Smith repeatedly had her rub his penis, that he repeatedly rubbed her "monkey," that he once forced her to suck on his penis,

and that he once put his penis in her buttocks and "kept pushing [her] down on it."

{¶ 8} After reading the hospital reports, Officer Kunkleman consulted with Detective Steven Stechschulte about the case. Kunkleman also prepared an arrest warrant for Smith and a search warrant for his residence. On September 22, 2020, pursuant to the warrants, Smith was arrested, and his home was searched.

{¶ 9} Detective Stechschulte twice interviewed Smith: first on the day of his arrest and again the following day. Smith initially denied any sexual contact with the children and suggested that their father had coerced them into making the allegations. He later admitted to sexual conduct with H.B., although he denied vaginal intercourse. At that time, Smith asserted that, "with the two younger ones, there was no contact whatsoever." By the end of the first interview, Smith admitted that he performed oral sex on H.B. approximately 20 to 30 times, that she performed oral sex on him "about the same amount, maybe less," but at least 20 times, that H.B. stroked his penis at least 30 times, and that he had stroked H.B. between her lips (meaning, labia majora) approximately 15 times. Smith continued to deny sexual contact with Ab.B. and Al.B.

{¶ 10} The second interview focused largely on Smith's conduct with Ab.B. and Al.B. Smith admitted to four or five instances where Ab.B. stroked his penis; a couple of those times, Smith also rubbed Ab.B. between her lips. He stated that Ab.B. performed oral sex on him one time. He acknowledged grabbing her buttocks

but denied engaging in anal sex. Smith stated that there was only one occasion with Al.B. that could be considered sexual with her, where she touched his penis. Smith claimed that he was not sexually attracted to Ab.B. and Al.B. because they were young children. With H.B., however, he felt that she was there for him and "got confused." Smith wrote an apology letter to the girls.

{¶ 11} In November 2020, Smith was charged in an 83-count indictment with 59 counts of rape in violation of R.C. 2907.02(A)(1)(b), 10 counts of rape in violation of R.C. 2907.02(A)(2), 10 counts of sexual battery in violation of R.C. 2907.02(A)(5), and 4 counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). Many of the counts included an allegation that the victim was compelled to submit by force or threat of force or that the victim was under 10 years of age.

{¶ 12} In pretrial motions, Smith sought to suppress the statements he made during his police interviews. After reviewing the video recordings of the two interviews, the trial court denied the first motion to suppress. Smith withdrew his second motion. Citing the Confrontation Clause of the Sixth Amendment and hearsay rules, Smith also filed a motion in limine, seeking to prohibit the State from introducing the recorded forensic interviews and from having any witness testify to the girls' out-of-court statements. After a hearing, the trial court denied Smith's motion.

{¶ 13} A bench trial was held on June 21 and 22, 2022. Immediately before the start of trial, the State dismissed numerous counts, and the matter proceeded on 26 counts: 19 counts related to H.B. (3 counts of gross sexual imposition, 5 counts of sexual battery, and 11 counts of rape), 2 counts related to Ab.B. (both rape), and 5 counts related to Al.B. (4 counts of rape and 1 count of gross sexual imposition). The State presented the testimony of three law enforcement officers, the two forensic interviewers, and H.B. The prosecution also offered 28 exhibits, including redacted video recordings of the girls' forensic interviews and of Detective Stechschulte's two interviews with Smith. The videos were admitted over defense counsel's objection. Smith offered no evidence in his defense.

{¶ 14} On June 23, 2022, the trial court found Smith guilty of all offenses. The court immediately proceeded to sentencing, where it merged the sexual battery counts into Counts 10-14 and imposed the following sentences, all of which it determined were mandatory terms:

| Count | Orig.# | Offense | Statute | Degree | Child | Sentence |
|-------|--------|---------|---------|--------|-------|----------|
| 1 | 1 | GSI | 2907.05(A)(4) | F3 | H.B. | 60 months |
| 2 | 2 | GSI | 2907.05(A)(4) | F3 | H.B. | 60 months |
| 3 | 3 | GSI | 2907.05(A)(4) | F3 | H.B. | 60 months |
| 4 | 4 | Rape | 2907.02(A)(1)(b) (force) | F1 | H.B. | 25 years to life |
| 5 | 5 | Rape | 2907.02(A)(1)(b) (force) | F1 | H.B. | 25 years to life |
| 6 | 24 | Rape | 2907.02(A)(1)(b) (force) | F1 | H.B. | 25 years to life |
| 7 | 25 | Rape | 2907.02(A)(1)(b) (force) | F1 | H.B. | 25 years to life |

| 8 | 44 | Rape | 2907.02(A)(1)(b) (force) | F1 | H.B. | 25 years to life |
| 9 | 45 | Rape | 2907.02(A)(1)(b) (force) | F1 | H.B. | 25 years to life |
| 10 | 54 | Rape | 2907.02(A)(2) | F1 | H.B. | Minimum 11 years to maximum of 16.5 |
| 11 | 55 | Rape | 2907.02(A)(2) | F1 | H.B. | Minimum 11 years to maximum of 16.5 |
| 12 | 56 | Rape | 2907.02(A)(2) | F1 | H.B. | Minimum 11 years to maximum of 16.5 |
| 13 | 57 | Rape | 2907.02(A)(2) | F1 | H.B. | Minimum 11 years to maximum of 16.5 |
| 14 | 58 | Rape | 2907.02(A)(2) | F1 | H.B. | Minimum 11 years to maximum of 16.5 |
| 20 | 74 | Rape | 2907.02(A)(1)(b) (under 10) | F1 | Ab.B. | Life in prison without possibility of parole |
| 21 | 78 | Rape | 2907.02(A)(1)(b) (force) | F1 | Ab.B. | 25 years to life |
| 22 | 79 | Rape | 2907.02(A)(1)(b) (under 10) | F1 | Al.B. | Life in prison without possibility of parole |
| 23 | 80 | Rape | 2907.02(A)(1)(b) (under 10) | F1 | Al.B. | Life in prison without possibility of parole |
| 24 | 81 | GSI | 2907.05(A)(4) | F3 | Al.B. | 60 months |

| 25 | 82 | Rape | 2907.02(A)(1)(b) (under 10) | F1 | Al.B. | Life in prison without possibility of parole |
| 26 | 83 | Rape | 2907.02(A)(1)(b) (under 10) | F1 | Al.B. | Life in prison without possibility of parole |

The trial court ordered all counts relating to a particular child be served concurrently, but that the three sets of charges be served consecutively – Counts 1 to 14 (aggregate 25 years to life) were to be served consecutively to Counts 20 and 21 (aggregate life without parole) and Counts 20 and 21 were to be served consecutively to Counts 22 to 26 (aggregate life without parole). The court notified Smith that he would be required to register as a Tier III sex offender.

{¶ 15} Smith appeals from his convictions, raising five assignments of error. We will address them in a manner that facilitates our analysis.

## II. Sufficiency of the Evidence on Counts 20 & 21

{¶ 16} In his second assignment of error, Smith claims that his convictions on Counts 20 and 21 – the two rape counts concerning Ab.B. – were based on insufficient evidence and, therefore, violated his right to due process.

{¶ 17} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio

St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*; *State v. Troche*, 3d Dist. Marion No. 9-22-18, 2023-Ohio-565, ¶ 18.

{¶ 18} When reviewing claims based on the sufficiency of the evidence, we are required to consider all the evidence admitted at trial, regardless of whether it was admitted erroneously. *See State v. Fleming*, 2d Dist. Clark No. 2021-CA-40, 2022-Ohio-1876, ¶ 27, citing, e.g., *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284. Accordingly, we must consider the disputed recordings of the forensic interviews in conducting our analysis.

{¶ 19} Counts 20 and 21 each involved a charge of rape in violation of R.C. 2907.02(A)(1)(b). Count 20 concerned digital penetration and included an allegation that the victim was less than 10 years old. Count 21 concerned fellatio and included an allegation that Smith purposefully compelled the victim to submit by force or threat of force.

{¶ 20} R.C. 2907.02(A)(1)(b) is Ohio's statutory rape statute, imposing strict liability on a person who has sexual conduct with a child under the age of 13. *State*

*v. Alexander*, 3d Dist. Allen No. 1-22-11, 2023-Ohio-123, ¶ 16, citing *In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671, 950 N.E.2d 528, ¶ 30. Under that statute, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b).

**{¶ 21}** "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A). "Penetration, however slight, is sufficient to complete vaginal or anal intercourse." *Id.* This court has repeatedly recognized that if the force of an object, like a finger, causes a victim's labia to spread, that is sufficient penetration to constitute "sexual conduct" under R.C. 2907.02(A)(1)(b). *E,g, State v. McCoy*, 3d Dist. Marion No. 9-18-23, 2020-Ohio-4511, ¶ 72; *Alexander* at ¶ 38, fn.4, quoting *State v. Sanchez-Sanchez*, 8th Dist. Cuyahoga No. 110885, 2022-Ohio-4080, ¶ 125; *State v. Carter,* 3d Dist. Allen No. 1-21-19, 2022-Ohio-1444, ¶ 99, fn. 9.

**{¶ 22}** Ab.B. did not testify at trial, but a redacted video recording of her forensic interview was played for the court. *See* State's Exhibit 24. During her

interview, Ab.B. described an incident when Smith touched her while she rubbed his penis. She indicated that Smith first touched her breasts, then slid down to her "monkey," and finally moved his hand back to "squish her butt cheek." When asked about how he touched her "monkey," Ab.B. said that Smith put his hand in her pants and began to rub it, touching her skin. She indicated that he put his finger "in the middle of it" and start rubbing it; his finger slid "through the crease."

{¶ 23} During his second interview with Detective Stechschulte, Smith admitted to touching Ab.B. He stated that Ab.B. came into the room when he and H.B. were touching each other and wanted to try. Smith indicated that Ab.B. lowered her own pants and they "tried it." Smith stated that he did not get hard, and they stopped after a couple minutes because he was not aroused by it. Smith told the detective that H.B. was in the room, talking with him as if nothing were happening. When asked by Detective Stechschulte if he touched Ab.B. the same way he touched H.B., i.e., by going slightly between the two lips and rubbing, Smith responded affirmatively. Smith agreed with Ab.B.'s description of going "through the crease." Smith also told the detective about a similar incident, approximately a week later, where Smith and Ab.B. again were rubbing each other. Smith identified the address where he lived when these incidents occurred; Ab.B. was 9 years old for two of the three months that they lived there. She told her forensic interviewer that she was 8 or 9 years old when the abuse began and 10 years old when it ended.

Construing the evidence in the light most favorable to the State, Smith's and Ab.B.'s statements were sufficient to establish rape, as alleged in Count 20.

**{¶ 24}** Ab.B. did not describe any incidents where she performed fellatio on Smith. However, in his second interview with Detective Stechschulte, Smith told the officer about a time when Ab.B. came into the room while H.B. was performing oral sex on him. According to Smith, H.B. told her sister to "try it." Smith indicated that Ab.B. sucked on his penis for "about a minute" but stopped because she did not like the taste. Smith's admission was sufficient to prove that Smith committed rape by means of fellatio.

**{¶ 25}** Count 21 also alleged that the victim was compelled to submit by "force or threat of force." "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2907.01(A)(1). "A threat of force can be inferred from the circumstances surrounding sexual conduct." *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), paragraph one of the syllabus; *State v. Cook*, 3d Dist. Union No. 14-19-26, 2020-Ohio-3411 ¶ 117.

**{¶ 26}** The force necessary to commit rape varies based on the respective age, size and strength of the parties and their relation to each other. *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304, (1988); *Cook* at ¶ 117. "[W]hen the rape involves a child and that child's parent, or person who stands in loco

Case No. 1-22-40

parentis, subtle and psychological forms of coercion sufficiently show force." *State v. Shadoan*, 4th Dist. Adams No. 03CA764, 2004-Ohio-1756, ¶ 21. "As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Eskridge* at 59. "A child's will can be overcome by fear and duress when [a parent] tells the child to do something, and commands the child not to tell anyone about it." *State v. Dehner*, 12th Dist. Clermont No. CA2012-12-090, 2013-Ohio-3576, ¶ 19, citing *Eskridge* at 58.

{¶ 27} Although Smith suggested that Ab.B. was not forced to comply, Ab.B. stated in her forensic interview that she would be in trouble if she told anyone. She further said that if the girls did not do what Smith asked, he would get mad and tell her mother that they were not bonding with him and then their mother would get mad at them. Ab.B. was between eight and ten years old when the abuse occurred. Given the respective ages of Smith and Ab.B. and Smith's stepparent relationship to her, Smith's oral threats were sufficient to constitute force within the meaning of R.C. 2907.01(A).

{¶ 28} Smith's second assignment of error is overruled.

### III. Admission of Forensic Interviews

{¶ 29} In his first assignment of error, Smith contends that his federal and state rights to confront witnesses against him were violated by the admission of the redacted video recordings of the forensic interviews of Ab.B. and Al.B., who did

not testify at trial. Smith does not claim on appeal that the recordings constituted inadmissible hearsay.

{¶ 30} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Section 10, Article I of the Ohio Constitution, which includes the right "to meet face to face," provides "no greater right of confrontation than the Sixth Amendment." *State v. Self*, 56 Ohio St.3d 73, 79, 564 N.E.2d 446 (1990).

{¶ 31} Under the federal Confrontation Clause, testimonial out-of-court statements are prohibited, unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 17; *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Crawford* did not define "testimonial," but it is generally understood that testimonial statements are those made for "a primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011); *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 40; *State v. Bender*, 3d Dist. Union No. 14-19-22, 2020-Ohio-722, ¶ 10.

{¶ 32} In *Arnold*, the Ohio Supreme Court addressed whether statements

made to interviewers at a child advocacy center were testimonial and thus inadmissible pursuant to Confrontation Clause when the child was unavailable for cross-examination at trial. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775. The Court noted that child advocacy centers are unique in that multidisciplinary teams cooperate so that the child is interviewed only once. *Id.* at ¶ 33. Consequently, the interviews serve dual purposes: (1) to gather forensic information needed by the team, and (2) to elicit information necessary for medical diagnosis and treatment. The Supreme Court held that statements made to the interviewer that served primarily a forensic or investigative purpose were testimonial, whereas those made for medical diagnosis and treatment were not. *Id.* at paragraphs one and two of the syllabus, ¶ 44. The Supreme Court noted that "the fact that police officers watched the interview and that it was recorded does not change the fact that the statements were necessary for [the child's] medical diagnosis and treatment. Similarly, the fact that information gathered for medical purposes is subsequently used by the state does not change the fact that the statements were made for medical diagnosis and treatment." *Id.* at ¶ 43.

{¶ 33} Shortly after *Arnold* was rendered, this court affirmed the trial court's exclusion of a child's statements that were made in an interview with a social worker with Logan County Children Services. *State v. Goings*, 3d Dist. Logan No. 8-11-03, 2012-Ohio-1793. In that case, the social worker testified that the purpose of the

interview was to determine the veracity of the allegations and whether the child required medical or emotional treatment. Based on the child's statements during the interview, the social worker recommended that the child be taken to the hospital, but indicated it was not an emergency to do so. No information was forwarded to a medical facility or medical professional, and the social worker was not working with a medical professional; to the contrary, the social worker contacted the police following the interview. We concluded that "nothing in the interview supports a conclusion that any part of the interview was directed to medical diagnosis or treatment[.]" *Goings* at ¶ 34.

{¶ 34} More recently, this court held that an interview conducted under circumstances like those before us was for medical diagnosis and treatment. *State v. Speicher*, 3d Dist. Union No. 14-13-17, 2020-Ohio-3845 (we did not address the Confrontation Clause, because the child testified at trial.). There, the interview was performed by a licensed social worker / medical forensic interviewer, and the interviewer testified at a suppression hearing that she interviewed the child for the purpose of medical diagnosis and treatment before the child was examined by a physician; the physician observed the interview. Law enforcement was not present during the interview, and the social worker was unaware whether law enforcement had been notified of the allegations when the interview occurred.

{¶ 35} In the context of whether statements fell under Evid.R. 803(4), the

medical diagnosis or treatment exception to the hearsay rule, we also have noted that "[a] narrative account containing peripheral details as the victim recounts abusive activities can be made for the primary purpose of medical diagnosis or treatment." *Bender* at ¶ 16, quoting *State v. Warman*, 12th Dist. Butler No. CA2016-02-029, 2017-Ohio-244, ¶ 71 (Piper, J., concurring.). We held that a sexual assault nurse's recounting at trial of a rape victim's narrative account of the sexual assault was admissible as a statement made for the purpose of medical diagnosis or treatment. *Id.*

{¶ 36} In this case, Ab.B. and Al.B. were interviewed by Celeste Prince, who was employed as a "forensic interviewer and trafficked and exploited youth case coordinator" by The Center for Family Safety and Healing, which is part of Nationwide Children's Hospital. The center is an outpatient clinic for the hospital that houses the child advocacy center and other victim services. (Tr. 93.)

{¶ 37} Prince testified that the goal of a forensic interview is to "gather information about suspected abuse or neglect for medical diagnosis and treatment," most often for sexual abuse. (Tr. at 94.) She stated that when conducting a forensic interview, she speaks with doctors about the allegations prior to the interview, the doctors observe the interviews, and she receives feedback from them during the interview process about additional information that would be useful to them for their subsequent medical exams. When interviewing for suspected sexual abuse, relevant

-17-

information includes the body parts involved, the time frame of the alleged abuse, the identity of the abuser, the relationship between the alleged abuser and the victim, and whether threats had been made. After completing the interview and prior to the child receiving a medical exam, Prince speaks with the medical professional about the information received and answers any questions the medical professional might have. She then writes a summation of the interview for the medical record. Prince described the "neutral and open-ended approach" to questioning that she employs as an interviewer, and she testified that she followed her interview procedure when conducting the interviews of Al.B. and Ab.B.

{¶ 38} Officer Kunkleman testified that he was aware that interviews for the girls had been scheduled at Nationwide Children's Hospital, and he later received information from Nationwide regarding the girls' disclosure of sexual abuse. However, there was no testimony at trial that Kunkleman was present for or otherwise involved in Prince's interviews of Ab.B. and Al.B.

{¶ 39} Under the facts of this case, the statements made during Prince's forensic interviews were for the children's medical diagnosis and treatment. Moreover, there is no suggestion that Prince was acting on behalf of law enforcement or sought to obtain details of the abuse of Ab.B. and Al.B. to further law enforcement's investigation. The admission of the redacted video recordings of the interviews of Ab.B. and Al.B. did not violate the Confrontation Clause.

**{¶ 40}** Smith's first assignment of error is overruled.

### IV. Mandatory Sentence for Gross Sexual Imposition

**{¶ 41}** Smith's third assignment of error claims that the trial court erred by imposing mandatory prison terms for gross sexual imposition based on a finding that there was evidence to corroborate the victim's claims. His fourth assignment of error argues that his trial counsel rendered ineffective assistance by failing to object to the unconstitutional mandatory prison term. The State apparently agrees that the trial court erred, but it argues that this "is likely a procedural formality as defendant would have to overcome the presumption of prison," and it asks us to "decline to entertain a plain error analysis."

**{¶ 42}** Under R.C. 2953.08(G)(2), an appellate court may reverse or modify a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1; *State v. Crose*, 3d Dist. Crawford No. 3-22-34, 2023-Ohio-880, ¶ 17. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id*. at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶ 43}** Smith was convicted of four counts of gross sexual imposition, in

violation of R.C. 2907.05(A)(4), a felony of the third degree. Counts 1-3, which concerned H.B., allegedly occurred between March 1, 2019 and June 30, 2019. Count 24, involving Al.B., allegedly occurred between February 1, 2020 and September 9, 2020.

{¶ 44} In general, there is a presumption that a prison sentence will be imposed for a violation of R.C. 2907.05(A)(4). Former R.C. 2907.05(C)(2). When Smith committed gross sexual imposition, R.C. 2907.05(C)(2) further required a mandatory prison term for gross sexual imposition as a third-degree felony if either:

(a) Evidence other than the testimony of the victim was admitted in the case corroborating the violation; [or]

(b) The offender previously was convicted of or pleaded guilty to a violation of this section, rape, the former offense of felonious sexual penetration, or sexual battery, and the victim of the previous offense was less than thirteen years of age.

See former R.C. 2907.05(C)(2) (2007 Am.Sub.S.B. 10, 2018 Am.Sub.S.B. 201, and 2018 Sub.S.B.229). We note that R.C. 2907.05(C) has since been modified, and it no longer includes the corroboration language in former R.C. 2907.05(C)(2)(a).

{¶ 45} The Ohio Supreme Court has held former R.C. 2907.05(C)(2)(a) to be unconstitutional. *State v. Bevly*, 142 Ohio St.3d 41, 2015-Ohio-475, 27 N.E.3d 516, paragraph one of the syllabus. The Court found no rational basis for

distinguishing between cases based on the presence or the absence of corroborating evidence. *Id*. at ¶ 1, ¶ 18. It thus held that R.C. 2907.05(C)(2) violated the due process protections of the Fifth and Fourteenth Amendments to the United States Constitution. *Id*. at ¶ 19.

**{¶ 46}** Here, the trial court found that prison was mandatory for the gross sexual imposition counts due to R.C. 2907.05(C)(2)(a). In light of *Bevly*, the trial court's imposition of mandatory prison sentences under that statute was contrary to law.

**{¶ 47}** Even if we were to employ a plain error analysis, we would conclude that the imposition of a mandatory sentence under R.C. 2907.05(C)(2)(a) amounts to plain error. An error qualifies as "plain error" only if it is obvious and but for the error, the outcome of the proceeding clearly would have been otherwise. *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 8, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 32. In this case, the error is obvious, and any sentence imposed by the trial court for gross sexual imposition upon remand would be different, as it would not be a mandatory sentence. Although resentencing will have no practical effect on the length of Smith's imprisonment, given his sentences of life without the possibility of parole, we nevertheless find it appropriate to remand for resentencing on Counts 1, 2, 3, and 24.

{¶ 48} Smith's third assignment of error is sustained. Considering our disposition of the third assignment of error, Smith's fourth's assignment of error is overruled as moot.

### V. Constitutionality of the Reagan Tokes Act

{¶ 49} In his fifth assignment of error, Smith claims that the imposition of indefinite sentences under the Reagan Tokes Act violated "the jury trial guarantee, the doctrine of separation of powers, and due process principles under the federal and state constitutions." The trial court imposed indefinite sentences under the Reagan Tokes Act for Counts 10 through 14.

{¶ 50} "Since the indefinite sentencing provisions of the Reagan Tokes Law went into effect in March 2019, we have repeatedly been asked to address the constitutionality of these provisions. We have invariably concluded that the indefinite sentencing provisions of the Reagan Tokes Law do not facially violate the separation-of-powers doctrine or infringe on defendants' due process rights." (Citations omitted.) *State v. Ball*, 3d Dist. Allen No. 1-21-16, 2022-Ohio-1549, ¶ 59. In *Ball*, this court also rejected the appellant's argument that the Reagan Tokes Act violates a defendant's constitutional right to a trial by jury. *Id*. at ¶ 61-63. We find no basis to depart from our earlier precedent regarding the constitutionality of the Reagan Tokes Act.

{¶ 51} Smith's fifth assignment of error is overruled.

## VI.  Conclusion

{¶ 52} The judgment of the Allen County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for resentencing on Counts 1, 2, 3, and 24.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**MILLER, P.J. and ZIMMERMAN, J., concur.**

**/jlr**

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**