[Cite as *State v. Wolfe*, 2024-Ohio-4861.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

      CASE NO. 14-23-35

  v.

BRAD ROBERT WOLFE,

      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 22-CR-0212

Judgment Affirmed

Date of Decision:  October 7, 2024

APPEARANCES:

    *Alison Boggs* **for Appellant**

    *Samantha Hobbs* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Brad Robert Wolfe ("Wolfe"), appeals the August 31, 2023 judgment entry of sentence of the Union County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} On September 23, 2022, the Union County Grand Jury indicted Wolfe on eight counts: Counts One, Four, and Six of rape in violation of R.C. 2907.02(A)(2), (B), first-degree felonies; Counts Two, Five, and Seven of sexual battery in violation of R.C. 2907.02(A)(5), (B), third-degree felonies; Count Three of attempted gross sexual imposition in violation of R.C. 2923.02, 2907.05(A)(1), (C)(1), a fifth-degree felony; and Count Eight of gross sexual imposition in violation of R.C. 2907.05(A)(1), (C)(1), a fourth-degree felony. On September 28, 2022, Wolfe appeared for arraignment and entered pleas of not guilty to the indictment.

{¶3} The case proceeded to a jury trial on June 5-8, 2023. On June 8, 2023, the jury found Wolfe guilty of the counts alleged in the indictment. On August 31, 2023, the trial court sentenced Wolfe to a minimum term of 5 years to a maximum term of 7 1/2 years in prison as to Count One, to 12 months in prison as to Count Three, to 5 years in prison as to Counts Four and Six, respectively, and to 18 months in prison as to Count Eight. (Doc. No. 107). The trial court ordered Wolfe to serve the prison terms imposed as to Counts One, Three, Four, and Six consecutively. Further, the trial court ordered Wolfe to serve the prison term imposed as to Count

Eight concurrently to the consecutive terms imposed as to Counts One, Three, Four, and Six for an aggregate sentence of a minimum term of 15 years to a maximum term of 18 1/2 years in prison. The trial court merged Counts Two, Five, and Seven for purposes of sentencing. Moreover, the trial court classified Wolfe as a Tier III sex offender.

{¶4} Wolfe filed his notice of appeal on September 29, 2023. He raises five assignments of error for our review.

## First Assignment of Error

**The Trial Court Erred When It Repeatedly Drew The Jury's Attention To The Fact That It Gave A Limiting Instruction, Resulting In Prejudice to Appellant.**

{¶5} In his first assignment of error, Wolfe argues that he was prejudiced by the trial court's limiting instructions to the jury imploring it to disregard any improper character evidence. Specifically, Wolfe argues that the trial court improperly advised the jury with its spontaneous limiting instruction.

### *Standard of Review*

{¶6} Generally, "'[a]n appellate court reviews a trial court's decision to give the jury a particular set of jury instructions under an abuse of discretion standard.'" *State v. Harrison*, 2015-Ohio-1419, ¶ 61 (3d Dist.), quoting *State v. Barker*, 2012-Ohio-522, ¶ 91 (11th Dist.). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151,

157 (1980). "However, when a jury instruction raises a question of law, we apply a de novo standard of review." *State v. Sheldon*, 2019-Ohio-4123, ¶ 66 (3d Dist.). "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

*Analysis*

**{¶7}** On appeal, Wolfe argues that the trial court erred by excessively instructing the jury to disregard references to prior bad acts that the State failed to redact from the 911 emergency call and the victim's interview with Ashley Cooley ("Cooley"), a social worker with the Center for Family Safety and Healing at Nationwide Children's Hospital ("CAC"). In particular, Wolfe takes issue with the trial court's decision to address the jury (in over four pages of trial transcript) about "what it is not going to hear in [the] CAC interview *before* the jury actually hear[d] it!" (Emphasis in original.) (Appellant's Brief at 7). In addition to assigning error to the trial court's instruction, Wolfe argues that the trial court "actually identified a different date, 2015 from the date in question, which was 2018" and the trial court's misstatement prejudiced him because it suggested that the conduct "may have happened more frequently than just 2018." (*Id.* at 4).

**{¶8}** Importantly, Wolfe did not object to the trial court's instruction of which he now takes issue. Typically, to preserve an error for purposes of appeal, a party must object to the alleged error. *See State v. Rowland*, 2008-Ohio-3213, ¶ 7

(9th Dist.) ("To preserve an alleged error for appeal, a party must timely object and state the specific grounds for the objection."). Thus, "if a party forfeits an objection in the trial court, reviewing courts may notice only '[p]lain errors or defects affecting substantial rights.'" *State v. Payne*, 2007-Ohio-4642, ¶ 15, quoting Crim.R. 52(B).

{¶9} "Crim.R. 52(B) governs plain-error review in criminal cases." *State v. Bagley*, 2014-Ohio-1787, ¶ 55 (3d Dist.). "To demonstrate plain error, the defendant must demonstrate that the trial court deviated from a legal rule, the error was an obvious defect in the proceeding, and the error affected a substantial right." *State v. Howard*, 2011-Ohio-3524, ¶ 83 (3d Dist.). "The defendant must also demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors." *Id.* *See also State v. Carradine*, 2015-Ohio-3670, ¶ 44 (8th Dist.) ("Plain error does not exist in conjunction with improper jury instructions unless the defendant proves that the outcome of the trial would clearly have been different."). "We recognize plain error '"with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" *Howard* at ¶ 83 quoting *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶10} Based on our review of the entirety of the record before this court, we conclude that Wolfe cannot demonstrate that he was prejudiced by the trial court's

limiting instruction. *See State v. Burks*, 2018-Ohio-2515, ¶ 28-31 (8th Dist.). That is, Wolfe cannot demonstrate that the outcome of his trial would have been different. *See Carradine* at ¶ 46 (concluding that it was not "plain error with the inclusion of this additional instruction [because] the outcome of Carradine's trial would not have been different if the instruction was not included"). Critically, "[a] jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). Indeed, notwithstanding Wolfe's contention on appeal "that the trial court, without the prompting or request of defense counsel, frequently return[ed] to the topic, thereby reminding the jury of what it was instructed to forget," there is no indication that the jury did not follow the trial court's instructions. (Appellant's Brief at 3). *See State v. Scott*, 2022-Ohio-2723, ¶ 40 (3d Dist.) (concluding that "[t]here are no indications that the jury did not follow the trial court's instructions, and, in fact, a jury is presumed to follow the court's instructions"). Therefore, we conclude that the trial court's limiting instruction did not rise to the level of plain error.

**{¶11}** Consequently, Wolfe's first assignment of error is overruled.

### Second Assignment of Error

**The Trial Court Erred And Prejudiced Appellant As a Result Of It Overruling Multiple Objections Made By Appellant's Counsel During The Trial.**

{¶12} In his second assignment of error, Wolfe challenges evidentiary decisions by the trial court. Specifically, Wolfe contends that he was unfairly prejudiced by "the admission of the CAC video [and corresponding report because] the interview occurred over a month after the disclosure" and because it was improper hearsay evidence since "it was testimonial in nature, and not for medical diagnosis . . . ." (Appellant's Brief at 7).

*Standard of Review*

{¶13} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 2006-Ohio-2815, ¶ 62. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Adams*, 62 Ohio St.2d at 157.

*Analysis*

{¶14} Here, Wolfe argues that the trial court abused its discretion by not only allowing the video recording of the victim's interview with Cooley at the CAC to be played for the jury but by admitting the video and corresponding report into evidence. Specifically, Wolfe contends that the jury heard impermissible hearsay evidence.

{¶15} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the

truth of the matter asserted." Evid.R. 801(C). "Hearsay is inadmissible under Evid.R. 802, unless a particular statement fails to meet the two-part definition in Evid.R. 801(C), or fully satisfies the conditions for nonhearsay prior statements under Evid.R. 801(D)(1) or (2), or falls within one of recognized exceptions under Evid.R. 803 or 804." *State v. Richcreek*, 2011-Ohio-4686, ¶ 22 (6th Dist.). "[A] statement is, by definition, not hearsay when it is offered for a purpose other than to prove the truth of the matter asserted." *State v. Armour*, 2022-Ohio-2717, ¶ 38 (3d Dist.).

{¶16} "Evid.R. 803 is one such rule which permits the admission of certain hearsay statements even though the declarant is available as a witness." *Dayton v. Combs*, 94 Ohio App.3d 291, 300 (2d Dist. 1993). Under Evid.R. 803, the following hearsay statements are admissible: (1) present sense impression; (2) excited utterance; (3) then existing mental, emotional, or physical condition; and (4) statements for the purpose of medical diagnosis or treatment.

{¶17} "Evid.R. 803(4) provides that a hearsay statement made for purposes of medical diagnosis or treatment is not excluded by the hearsay rule, even though the declarant is available as a witness." *State v. Pate*, 2021-Ohio-1838, ¶ 63 (2d Dist.). "Specifically, the rule permits '[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external

source thereof insofar as reasonably pertinent to diagnosis or treatment.'" *Id.*, quoting Evid.R. 803(4). "'Such statements are deemed to be trustworthy and admissible because "the effectiveness of the treatment depends upon the accuracy of information given to the physician [so] the declarant is motivated to tell the truth."'" *Id.*, quoting *State v. Hazel*, 2012-Ohio-835, ¶ 45 (2d Dist.), quoting *State v. Brewer*, 2003-Ohio-3423, ¶ 28 (6th Dist.).

{¶18} Critically, "'[s]tatements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of diagnosis [or] treatment, are admissible pursuant to Evid.R. 803(4), when such statements are made for the purposes enumerated in that rule.'" *In re S.L.*, 2016-Ohio-5000, ¶ 25 (3d Dist.), quoting *State v. Dever*, 64 Ohio St.3d 401 (1992), paragraph two of the syllabus. "'The salient inquiry is whether the child's statements were made for purposes of diagnosis [or] treatment rather than for some other purpose.'" *Id.*, quoting *State v. Gutierrez*, 2011-Ohio-3126, ¶ 52 (3d Dist.). "One such 'other purpose' is the gathering of forensic information to investigate and potentially prosecute a defendant." *State v. Rose*, 2012-Ohio-5607, ¶ 42 (12th Dist.). "To the extent that a victim's statement to a nurse is for investigative purposes in furtherance of such criminal prosecution, the statements will not fall within the hearsay exception under Evid.R. 803(4). Rather, such statements are

considered 'testimonial' and implicate the Confrontation Clause." *Id.*, quoting *State v. Arnold*, 2010-Ohio-2742, ¶ 28.

**{¶19}** Therefore, "'[h]earsay statements made to a social worker may be admissible *if* they are made for purposes of medical diagnosis or treatment.'" (Emphasis in original.) *In re S.L.* at ¶ 25, quoting *State v. Goings*, 2012-Ohio-1793, ¶ 19 (3d Dist.). *See also Rose* at ¶ 42 (noting that social workers "often perform a dual role involving both medical diagnosis and treatment and the investigation and gathering of evidence" when "interviewing a child who may be a victim of sexual abuse"). In other words, "'[t]he question of whether a social worker should be permitted to testify pursuant to Evid.R. 803(4) depends upon the functions of the witness.'" *In re S.L.* at ¶ 26, quoting *In re Weatherholt*, 2000 WL 126662, *5 (3d Dist. Feb. 4, 2000). "'If the social worker encountered the victim for the purpose of diagnosis or treatment, then the evidence may be admissible. However, if the statement was made during the course of a fact-finding or investigatory procedure, Evid.R. 803(4) is not applicable.'" *Id.*, quoting *In re Weatherholt* at *5. *See also State v. Moore*, 2019-Ohio-1671, ¶ 26 (2d Dist.) (noting that "the Ohio Supreme Court recognized that child-advocacy centers are unique insofar as a single interview with a child serves 'dual purposes,' which are: '(1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and

(2) to elicit information necessary for medical diagnosis and treatment of the victim'"), quoting *Arnold* at ¶ 33.

**{¶20}** Decisively, this court has concluded that statements made by a child victim to an interviewer at a child-advocacy center (situated in a hospital setting) are admissible under Evid.R. 803(4). *Accord State v. Speicher*, 2020-Ohio-3845, ¶ 35 (3d Dist.) (determining that "the recorded interview at Nationwide Children's Hospital between [the social worker] and [the victim, which was] played at trial," was admissible under Evid.R. 803(4)). *See also Rose* at ¶ 47 (acknowledging that, when a child-victim testifies at trial and is subject to cross-examination, the Confrontation Clause does not present any constraints on the State's use of a child's prior statements to an examiner). Indeed, the record reflects that the victim's statements made during her interview with Cooley were for medical diagnosis and treatment. *Accord State v. Smith*, 2023-Ohio-1613, ¶ 39 (3d Dist.) (analyzing that "the statements made during [the social worker's] forensic interviews [conducted at the CAC] were for the children's medical diagnosis and treatment"). That is, there is no evidence in the record that Cooley was acting solely on behalf of law enforcement or that she sought to obtain details about the victim's abuse only to further law enforcement's investigation. *Accord id. See also In re S.L.* at ¶ 28 (analyzing that the witness was "a social worker employed by the Child Advocacy Center at Children's Hospital, as opposed to being employed by the county").

**{¶21}** Moreover, there is no indication that the victim's statements to Cooley were unreliable. *See In re S.L.* at ¶ 30. In particular, at the time the victim presented at the CAC, she was 17 years old. The record further reflects that Cooley did not question the victim in a leading or suggestive matter because Cooley testified that her "questions are open-ended" and State's Exhibit 6 (the video recording of the victim's interview) reflects the same. (June 5, 2023 Tr., Vol. II, at 245). Likewise, the record reflects that the victim understood the need to tell medical personnel the truth. Finally, and most importantly, the record reflects that the victim's declarations throughout the interview were consistent with her testimony at trial. *See State v. Pence*, 2013-Ohio-1388, ¶ 37 (12th Dist.).

**{¶22}** Consequently, we conclude that the trial court did not abuse its discretion by permitting the jury to view the video of Cooley's interview of the victim at the CAC or by admitting the video or Cooley's report into evidence. *See Speicher* at ¶ 35.

**{¶23}** Thus, Wolfe's second assignment of error is overruled.

### Third Assignment of Error

**The Trial Court Erred When It Overruled Appellant's Criminal Rule 29 Motion For Acquittal.**

**{¶24}** In his third assignment of error, Wolfe argues that his rape conviction under Count One, sexual-battery conviction under Count Two, and attempted-gross-sexual-imposition conviction under Count Three are based on insufficient evidence.

Specifically, Wolfe argues that there is insufficient evidence as to the date that the offenses occurred.

*Standard of Review*

{¶25} Under Crim.R. 29(A), a court "shall order the entry of the judgment of acquittal of one or more offenses . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." Consequently, "[a] motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

{¶26} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v.*

*Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

*Analysis*

**{¶27}** As an initial matter, even though Wolfe challenges the sufficiency of the evidence supporting the jury's finding of guilt as to the sexual-battery charge under Count Two of the indictment, we need not address that argument. *Accord Sheldon*, 2019-Ohio-4123, at ¶ 11 (3d Dist.). "Specifically, '[w]hen counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless' beyond a reasonable doubt." *Id.*, quoting *State v. Ramos*, 2016-Ohio-7685, ¶ 14 (8th Dist.).

**{¶28}** In this case, error, if any, with respect to the sufficiency of the evidence as to the jury's finding of guilt as to Wolfe's sexual-battery charge under Count Two is harmless beyond a reasonable doubt because it was merged with Count One. *Accord id.* at ¶ 12; *Ramos* at ¶ 13. In other words, Wolfe was not *convicted* of the sexual-battery offense alleged under Count Two because the trial court merged that offense for purposes of sentencing. *Accord Sheldon* at ¶ 12. Indeed, the Supreme

Court of Ohio has explicitly stated that a "conviction" requires both a finding of guilt and a sentence. *Ramos* at ¶ 16. For these reasons, we need not address any arguments challenging the sufficiency of the evidence regarding the jury's finding of guilt as to Wolfe's sexual-battery charge under Count Two. *Accord Sheldon* at ¶ 12; *Ramos* at ¶ 13, 18.

{¶29} Therefore, we will begin by addressing Wolfe's sufficiency-of-the-evidence argument as it relates to his rape conviction under Count One and his attempted-gross-sexual-imposition conviction under Count Three. On appeal, Wolfe argues that the trial court erred by denying his Crim.R. 29 motion because the State failed establish the date on which the conduct occurred.

{¶30} Wolfe was convicted of rape under R.C. 2907.02, which provides in its relevant part that, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). Wolfe was also convicted of attempted gross sexual imposition. R.C. 2923.02, Ohio's attempt-crime statute, provides, in its relevant part, that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). Ohio's gross-sexual-imposition statute, R.C. 2907.05, provides, in its relevant part, that "[n]o person shall have sexual contact with another [or] cause another to have sexual

contact with the offender . . . when . . . [t]he offender purposely compels the other person . . . to submit by force or threat of force." R.C. 2907.05(A)(1).

**{¶31}** "'In a criminal charge the exact date and time are immaterial unless in the nature of the offense exactness of time is essential. It is sufficient to prove the alleged offense at or about the time charged.'" *State v. S.S.*, 2014-Ohio-5352, ¶ 39 (10th Dist.), quoting *Tesca v. State*, 108 Ohio St. 287 (1923), paragraph one of the syllabus. *See also State v. Miles*, 2003-Ohio-1370, ¶ 14 (3d Dist.). Therefore, "the lack of specificity as to the dates on which this conduct occurred does not warrant a finding of insufficiency." *State v. Victor*, 2022-Ohio-4159, ¶ 21 (11th Dist.). Rather, "[p]roof of the offense on or about the alleged date is sufficient to support a conviction even where evidence as to the exact date of the offense is in conflict." *S.S.* at ¶ 39. Furthermore, under the precedent of this court, "'this rule [is not] altered by the presentation of an alibi defense.'" *Miles* at ¶ 14, quoting *In re French*, 1988 WL 106177, *1 (3d Dist. Oct. 5, 1988).

**{¶32}** Moreover, "'in cases involving alleged sexual misconduct with young children, . . . it is not mandatory for the state to provide precise dates and times because young children are usually unable to remember such specific information and such incidents usually take place over an extended span of time.'" *Victor* at ¶ 21, quoting *State v. LaTorres*, 2001 WL 901045, *4 (11th Dist. Aug. 10, 2001). *See also State v. Geboy*, 145 Ohio App.3d 706, 725 (3d Dist. 2001) ("In cases of long-

term abuse, the state is often forced to contend with a legitimate dilemma in that the victims, due to tender years or lack of sophistication, do not associate these events with a particular calendar date."). "'[I]f the evidence supports a finding that the defendant was alone with the victim during the relevant time frame and the defense is that the sexual abuse never occurred,' . . . 'the inability to identify a specific date does not require reversal of a conviction.'" *Victor* at ¶ 21, quoting *LaTorres* at *4.

{¶33} In this case, even though the date on which the offense occurred is not an essential element of rape or attempted gross sexual imposition, the State presented sufficient evidence that rape offense charged under Count One and the attempted-gross-sexual-imposition offense charged under Count Three occurred in March 2020. Specifically, Cooley identified State's Exhibit 6 as the video recording of her interview of the victim at the CAC and she identified State's Exhibit 7 as the report that she generated following her interview of the victim in this case. State's Exhibits 6 and 7 reflect that the victim disclosed that the conduct alleged in Counts One and Three occurred when she was 17 years old in March 2020.

{¶34} Nevertheless, Wolfe asserts that, "[s]ince it was error to use and admit the CAC interview and relying on hearsay admission of the evidence, the trial court erred when it overruled the motion for acquittal." (Appellant's Brief at 9). However, based on our resolution of Wolfe's second assignment of error in which

we concluded that the trial court did not abuse its discretion by admitting State's Exhibits 6 or 7, Wolfe's argument is without merit.

**{¶35}** Even so, the State presented sufficient evidence from which the trier of fact could infer that the rape and attempted gross sexual imposition occurred reasonably within the timeframe alleged in the indictment. *Accord S.S.*, 2014-Ohio-5352, at ¶ 40 (10th Dist.). Specifically, the indictment set forth the timeframe for the rape offense identified under Count One and the attempted-sexual-battery-offense under Count Three as having occurred between January 1, 2020 and April 1, 2020. *See State v. Miller*, 2006-Ohio-6236, ¶ 23 (5th Dist.) (concluding that because "time is not an essential element of rape . . . , it was sufficient for the State to prove the offense occurred on a date reasonably near the date claimed"). At trial, the victim testified that her birthday is in February and that the rape offense charged under Count One and the attempted-gross-sexual-imposition offense charged under Count Three occurred when she was 17 years old before the rape offense (alleged in Count Four), which occurred in July or August 2020. Consequently, the jury could infer that the rape charged under Count One and the attempted gross sexual imposition charged under Count Three occurred reasonably within the time frame alleged in the indictment. *See State v. Cave*, 2015-Ohio-2233, ¶ 19 (4th Dist.); *Victor*, 2022-Ohio-4159, at ¶ 23 (11th Dist.).

{¶36} Therefore, we conclude that Wolfe's rape conviction under Count One and his attempted-gross-sexual-imposition conviction under Count Three are based on sufficient evidence.

{¶37} Wolfe's third assignment of error is overruled.

**Fourth Assignment of Error**

**Appellant Was Denied The Effective Assistance Of Counsel During His Trial As Guaranteed By The Sixth And Fourteenth Amendments To The United States Constitution And Article I, Section 10 Of The Ohio Constitution.**

{¶38} In his fourth assignment of error, Wolfe argues that his trial counsel was ineffective for failing to object to the State's references to inadmissible hearsay, prior-bad-acts evidence, and his pre-arrest silence as well as for failing to move for a mistrial.

*Standard of Review*

{¶39} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is

entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

{¶40} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶41} To begin with, Wolfe contends that his trial counsel was ineffective for failing to object to the State's references to inadmissible hearsay evidence, "unindicted prior bad acts," and his pre-arrest silence. (Appellant's Brief at 11-12). However, "[t]he 'failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *Liles* at ¶ 49, quoting *State v. Johnson*, 2006-

Ohio-6404, ¶ 139. "Because 'objections tend to disrupt the flow of a trial, and are considered technical and bothersome by the fact-finder,' competent counsel may reasonably hesitate to object in the jury's presence." *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994), quoting Jacobs, *Ohio Evidence*, at iii-iv (1989). "To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness." *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988). *See Liles* at ¶ 49 ("""In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.""""), quoting *Johnson* at ¶ 140, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006).

{¶42} Here, Wolfe failed to demonstrate that his trial counsel was ineffective. That is, Wolfe failed to demonstrate that his trial counsel's failure to object to the State's references to inadmissible hearsay, prior-bad-acts evidence, and Wolfe's pre-arrest silence amounted to a substantial violation of his duties to his client and that he was materially prejudiced by his trial counsel's failure to object. Imperatively, even if Wolfe's trial counsel's failure to object to the State's

references to inadmissible hearsay, prior-bad-acts evidence, and his pre-arrest silence was not a matter of trial strategy, Wolfe did not demonstrate a reasonable probability that, but for these alleged errors, the outcome of his trial would have been different. *Accord State v. Vielma*, 2012-Ohio-875, ¶ 49 (3d Dist.). Indeed, aside from directing us to a laundry list of his trial counsel's alleged failures, Wolfe neglected to provide us with an argument demonstrating how (absent these alleged errors) the outcome of his trial would have been different. *See State v. Morgan*, 2024-Ohio-625, ¶ 18 (3d Dist.) (concluding that Morgan "failed to carry the burden of establishing an ineffective assistance of counsel claim" because her "speculative argument cannot establish the prejudice prong of the *Strickland* test").

{¶43} Nevertheless, notwithstanding Wolfe's failure to carry his burden of demonstrating prejudice, our resolution of Wolfe's first and second assignments of error refute any argument that the outcome of Wolfe's trial would have been different. Specifically, we concluded in Wolfe's first assignment of error that there is no indication that the jury did not follow the trial court's instructions regarding any mention of Wolfe's prior bad acts. Thus, Wolfe cannot demonstrate here that he was materially prejudiced by reference to prior-bad-acts evidence. Furthermore, based on our resolution of Wolfe's second assignment of error, much of the hearsay evidence to which Wolfe argues that his trial counsel should have objected was *admissible*. *See, e.g.*, *Pence*, 2013-Ohio-1388, at ¶ 40-44 (12th Dist.). Therefore,

Wolfe's trial counsel was not ineffective for failing to object to the State's references to inadmissible hearsay, prior-bad-acts evidence, or Wolfe's pre-arrest silence.

{¶44} Wolfe further argues that his trial counsel was ineffective for failing to move for a mistrial following the trial court's limiting instruction. "[W]hether or not to move for a mistrial is a tactical decision and is well within the range of competent assistance of counsel." *State v. Gilbert*, 2011-Ohio-4340, ¶ 83 (12th Dist.). "'A mistrial should not be ordered in a cause simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties.'" *State v. Sipple*, 2018-Ohio-4342, ¶ 18 (10th Dist.), quoting *Tingue v. State*, 90 Ohio St. 368 (1914), paragraph three of the syllabus. "Notably, mistrials are appropriate only when the ends of justice so require and a fair trial is no longer possible." *State v. Carter*, 2017-Ohio-1233, ¶ 61 (3d Dist.).

{¶45} Based on our resolution of Wolfe's first assignment of error, we likewise conclude here that the trial court's limiting instruction did not prevent Wolfe from receiving a fair trial. *See State v. Dodson*, 2012-Ohio-5576, ¶ 64 (3d Dist.). Moreover, the record reveals that Wolfe's trial counsel's decision not to request a mistrial was a tactical decision. *See State v. Flitcraft*, 2024-Ohio-3146, ¶ 88 (11th Dist.). Specifically, out of the presence of the jury, Wolfe's trial counsel

informed the trial court that he "might have to consider moving for a mistrial because of so many of" the references to Wolfe's prior conduct. (June 5, 2023 Tr., Vol. II, at 272). That Wolfe's trial counsel ultimately elected not to pursue a mistrial does not amount to ineffective assistance of trial counsel. Consequently, we conclude that Wolfe's trial counsel was not ineffective for failing to move for a mistrial. *See State v. Stout*, 2011-Ohio-3522, ¶ 14 (3d Dist.).

**{¶46}** Finally, Wolfe asserts that the cumulative effect of his trial counsel's failures denied him a fair trial. Generally, "[u]nder [the] doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 2015-Ohio-52, ¶ 83 (3d Dist.). "To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." *State v. Stober*, 2014-Ohio-5629, ¶ 15 (3d Dist.), quoting *In re J.M.*, 2012-Ohio-1467, ¶ 36 (3d. Dist.). However, since we determined that Wolfe's trial counsel was not ineffective, the doctrine of cumulative error does not apply. *State v. Bertuzzi*, 2014-Ohio-5093, ¶ 110 (3d Dist.). *See also State v. Graham*, 2020-Ohio-6700, ¶ 170 ("Each assertion of ineffective assistance of counsel going to cumulative error depends on the merits of each individual claim;

when none of the individual claims of ineffective assistance of counsel have merit, cumulative error cannot be established simply by joining those meritless claims together.").

{¶47} For these reasons, Wolfe's fourth assignment of error is overruled.

### Fifth Assignment of Error

**The Trial Court Erred When It Permitted The State To Reference At Great Length, Appellant's Expunged Juvenile Record And Considered It In Fashioning Its Sentence, Creating A Sentence That Is Contrary To Law.**

{¶48} In his fifth assignment of error, Wolfe challenges the sentence imposed by the trial court. Specifically, Wolfe argues that his consecutive sentence is contrary to law because it is based on "an expunged/sealed record of Mr. Wolfe . . . ." (Appellant's Brief at 15).

*Standard of Review*

{¶49} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. When reviewing the imposition of consecutive sentences, "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-

Ohio-3851, ¶ 5. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

**{¶50}** We will begin by addressing Wolfe's argument that his sentence is contrary to law because "it is based, in part, on [Wolfe's expunged record] that should never have been brought before the court for consideration." (Appellant's Brief at 15). Generally, "[i]t is well-established that the statutes governing felony sentencing no longer require the trial court to make certain findings before imposing a maximum sentence." *State v. Maggette*, 2016-Ohio-5554, ¶ 29 (3d Dist.), citing *State v. Dixon*, 2016-Ohio-2882, ¶ 14 (2d Dist.) ("Unlike consecutive sentences, the trial court was not required to make any particular 'findings' to justify maximum prison sentences.") and *State v. Hinton*, 2015-Ohio-4907, ¶ 9 (8th Dist.) ("The law no longer requires the trial court to make certain findings before imposing a maximum sentence."). Rather, "'trial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 2015-Ohio-4225, ¶ 10 (3d Dist.), quoting *State v. Noble*, 2014-Ohio-5485, ¶ 9 (3d Dist.).

**{¶51}** In this case, as a first-degree felony, rape, carries a mandatory, indefinite sanction of 3-years to 11-years of imprisonment. R.C. 2907.02(A)(2),

(B), 2929.14(A)(1)(a), 2929.13(F), and 2929.144(B). Further, as a fourth-degree felony, gross sexual imposition, carries a non-mandatory, definite sanction of 6-months to 18-months of imprisonment. R.C. 2907.05(A)(1), (C)(1), 2929.14(A)(4). Finally, as a fifth-degree felony, attempted gross sexual imposition, carries a non-mandatory, definite sanction of 6-months to 12-months of imprisonment. R.C. 2907.05(A)(1), (C)(1), 2923.02(E), 2929.14(A)(5).

{¶52} "[A] sentence imposed within the statutory range is 'presumptively valid' if the [trial] court considered applicable sentencing factors." *Maggette* at ¶ 31, quoting *State v. Collier*, 2011-Ohio-2791, ¶ 15 (8th Dist.). Because the trial court sentenced Wolfe to a minimum term of 5 years to a maximum term of 7 1/2 years in prison as to his rape conviction under Count One, the trial court's sentence as to that conviction is within the statutory range and is appropriately calculated. Likewise, because the trial court sentenced Wolfe to 5 years in prison as to his rape convictions under Counts Four and Six, respectively, to 18 months in prison as to his gross-sexual-imposition conviction, and to 12 months in prison as to his attempted-gross-sexual-imposition, the trial court's sentence as to those convictions falls within the statutory range.

{¶53} When imposing a sentence for a felony offense, trial courts must consider R.C. 2929.11 and 2929.12. R.C. 2929.11 provides, in its relevant part, that the

overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources.

R.C. 2929.11(A). "In advancing these purposes, sentencing courts are instructed to 'consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.'" *Smith*, 2015-Ohio-4225, at ¶ 10 (3d Dist.), quoting R.C. 2929.11(A). "Meanwhile, R.C. 2929.11(B) states that felony sentences must be 'commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim' and also be consistent with sentences imposed in similar cases." *Id.*, quoting R.C. 2929.11(B).

{¶54} "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Id.*, citing R.C. 2929.12(A). "'A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12." *Id.* at ¶ 15, quoting *State v. Brimacombe*, 2011-Ohio-5032, ¶ 18 (6th Dist.).

{¶55} "[N]either R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *State v. Jones*, 2020-Ohio-6729, ¶ 20. "A trial court's statement that it considered the required statutory factors, without more,

is sufficient to fulfill its obligations under the sentencing statutes." *Maggette*, 2016-Ohio-5554, at ¶ 32 (3d Dist.).

**{¶56}** Thus, when imposing a felony sentence, "it is '[t]he trial court [that] determines the weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances.'" *State v. McKennelly*, 2017-Ohio-9092, ¶ 15 (12th Dist.), quoting *State v. Steger*, 2016-Ohio-7908, ¶ 18 (12th Dist.). "The fact that the trial court chose to weigh various sentencing factors differently than how appellant would have weighed them does not mean the trial court erred in imposing appellant's sentence." *Id.*

**{¶57}** At Wolfe's sentencing hearing and in its sentencing entry, the trial court considered the principles and purposes of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. (Aug. 31, 2023 Tr. at 30); (Doc. No. 107). Nevertheless, Wolfe contends that his sentence is contrary to law because the trial court improperly considered his expunged record. Wolfe's argument is belied by the record.

**{¶58}** In this case, the trial court determined that the prison sentences that it imposed are consistent with the principles and purposes of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. In assessing the seriousness of Wolfe's conduct, the trial court found that his conduct is more serious than conduct normally constituting the offense.

Specifically, the trial court found that the psychological harm suffered by the victim due to Wolfe's conduct was exacerbated by the victim's age; that the victim suffered serious psychological harm as a result of the offenses; and that Wolfe's relationship with the victim facilitated the offense. *See* R.C. 2929.12(B)(1)-(2), (6). The trial court also found that none of factors under R.C. 2929.12(C) indicating that Wolfe's conduct is less serious than conduct normally constituting the offense apply in this case.

**{¶59}** In assessing whether Wolfe was likely to commit future crimes, the trial court found that he is likely to commit future crimes because he shows no genuine remorse for his conduct. *See* R.C. 2929.12(D)(5). Critically, and contrary to Wolfe's argument on appeal, when applying the factors under R.C. 2929.12(E)— indicating that Wolfe is not likely to commit future crimes—the trial court found that Wolfe had *not* been adjudicated a delinquent child; had *not* been convicted of or pleaded guilty to a criminal offense; and led a law-abiding life for a significant number of years prior to committing the offenses in this case. *See* R.C. 2929.12(E)(1), (2), (3). In other words, the trial court did *not* consider *any* evidence of Wolfe's prior, expunged record when imposing his sentence. Consequently, since Wolfe's sentence is within the sentencing range and the trial court *properly* considered R.C. 2929.11 and 2929.12, Wolfe's sentence is not contrary to law. *See* *State v. Reed*, 2021-Ohio-1623, ¶ 20 (3d Dist.).

**{¶60}** Wolfe further argues under his fifth assignment of error (without any further explanation) that the trial court's "decision to impose consecutive sentences is also contrary to law." (Appellant's Brief at 15). "Except as provided in . . . division (C) of section 2929.14, . . . a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides, in its relevant part, that

> the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

-31-

{¶61} R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record before imposing consecutive sentences. *State v. Hites*, 2012-Ohio-1892, ¶ 11 (3d Dist.); *State v. Peddicord*, 2013-Ohio-3398, ¶ 33 (3d Dist.). Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*; *Id.*

{¶62} The trial court must state the required findings at the sentencing hearing prior to imposing consecutive sentences and incorporate those findings into its sentencing entry. *State v. Sharp*, 2014-Ohio-4140, ¶ 50 (3d Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, ¶ 29. A trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

{¶63} In this case, the trial court made the three statutorily required findings before imposing consecutive sentences at the sentencing hearing and it incorporated those findings into its sentencing entry. *Accord State v. Robinson*, 2017-Ohio-2703, ¶ 9 (3d Dist.). Specifically, at Wolfe's sentencing hearing, the trial court found "that the repeated rape of the child is the worst form of the offense" and "that the shortest prison term would demean the seriousness of the offense and would not protect the

public." (Aug. 31, 2023 Tr. at 32-33). That is, the trial court found "that consecutive sentences are necessary to protect the public from future crime and to punish the defendant. And that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger that the defendant poses to the public." (*Id.* at 33). The trial court further found

> that at least two of the multiple offenses were committed as part of one or more courses of conduct . . . and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(*Id.*). *See* R.C. 2929.14(C)(4)(b). The trial court incorporated those findings into its sentencing entry. (*See* Doc. No. 107).

**{¶64}** Accordingly, the record reflects that the trial court made the appropriate R.C. 2929.14(C)(4) findings before imposing consecutive sentences and incorporated those findings in its sentencing entry. Therefore, Wolfe's consecutive sentences are not contrary to law.

**{¶65}** Wolfe's fifth assignment of error is overruled.

**{¶66}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/hls**